**Harley P. GROSE, Appellant,**

**v.**

**Wilbur COHEN, Secretary of Health, Education & Welfare, Appellee.**

**No. 12722.**

United States Court of Appeals Fourth Circuit.

Argued Dec. 4, 1968.

Decided Feb. 5, 1969.

Franklin W. Kern, Charleston, W. Va., for appellant.

Charles M. Love, III, Asst. U. S. Atty., (Milton J. Ferguson, U. S. Atty., and W. Warren Upton, Asst. U. S. Atty., on brief), for appellee.

Before BRYAN, CRAVEN, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Harley P. Grose's application for a period of disability and disability insurance benefits under the Social Security Act was denied on the ground of administrative *res judicata.* This defense, we believe, is not applicable to Grose's claim. Therefore, we vacate the judgment of the district court and remand the case for consideration of Grose's application on its merits.

Grose was born in 1910. After completing the eighth grade he worked as a laborer. On January 26, 1943 he lost both legs above his knees in an accident at a coal tipple.[1] He was fitted with artificial legs and with the help of canes he managed to walk. Within fourteen months he began to drive his truck delivering coal and wood. He stopped in 1948 because he lacked business, and during the next several years he was unemployed. From October 1952 through December 1960, he operated a paper route as a self-employed person. He was forced to give up this work because of his amputations, a perforated ulcer, and failing eyesight, which unquestionably disabled him in 1961. Grose last met the special insured status requirements on June 30, 1948, so he must establish that he was under a disability which commenced prior to June 30, 1948.

In 1955 Grose applied for a disability freeze alleging he was disabled in January 1943. This was denied without a hearing and Grose did not appeal. In 1961 he applied for a period of disability and disability insurance benefits. After a hearing, his claim was denied on the ground that his impairments as of June 30, 1948 did not preclude him from engaging in substantial gainful activity. Grose did not seek judicial review.

Grose's present application was filed in 1966. The examiner, noting a lack of new and material evidence, held the decision on the 1961 application was *res judicata* and denied his claim. The district court granted summary judgment for the same reason.

Ordinarily an administrative decision becomes final unless a civil action is filed in district court within 60 days. Section 205(g) of the Act [42 U.S.C. § 405(g) (1964)]; 20 C.F.R. § 404.951. Under the doctrine of *res judicata,* the final decision may become the basis of denying subsequent applications.[2] Provision for disposition of claims on this ground is found in 20 C.F.R. § 404.937, which states in part:

> "The hearing examiner may, on his own motion, dismiss a hearing request, either entirely or as to any stated issue, under any of the following circumstances:
>
> "(a) *Res judicata.* Where there has been a previous determination or decision by the Secretary with respect to the rights of the same party on the same facts pertinent to the same issue or issues which has become final either by judicial affirmance or, without judicial consideration, upon the claimant's failure timely to request reconsideration, hearing, or review, or to commence a civil action with respect to such determination or decision * * *".

*Res judicata* of administrative decisions is not encrusted with the rigid finality that characterizes the precept in judicial proceedings. See Farley v. Gardner, 276 F.Supp. 270, 272 (S.D.W.

1. Grose was awarded $69.52 a month workmen's compensation. He also received $7,500.00 net from settlement of his claim against a railroad.

2. Hobby v. Hodges, 215 F.2d 754, 758 (10th Cir. 1954) (alternative holding); Moore v. Celebrezze, 252 F.Supp. 593 (E.D.Pa. 1966), aff'd per curiam, 376 F.2d 850 (3d Cir. 1967); Farley v. Gardner, 276 F. Supp. 270 (S.D.W.Va.1967). Cf. James v. Gardner, 384 F.2d 784 (4th Cir. 1967), cert. denied, James v. Cohen, 390 U.S. 999, 88 S.Ct. 1205, 20 L.Ed.2d 99 (1968). *Res judicata* is not applicable when facts that did not exist at the prior hearing are presented at a subsequent hearing. Johnson v. Flemming, 264 F.2d 322, 324 (10th Cir. 1959).

Va.1967). Application of the doctrine often serves a useful purpose in preventing relitigation of issues administratively determined, e. g., Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402, 60 S.Ct. 907, 84 L.Ed. 1263 (1940); but practical reasons may exist for refusing to apply it, e. g., United States v. Stone & Downer Co., 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927). And in any event, when traditional concepts of *res judicata* do not work well, they should be relaxed or qualified to prevent injustice. 2 Davis, Administrative Law, § 18.03 (1958). The regulations recognize that it is undesirable to attribute finality to every administrative decision. 20 C.F.R. §§ 404.957 and 404.958 provide in part:

§ 404.957:

"An initial or reconsidered determination of the Administration or a decision of a hearing examiner or of the Appeals Council which is otherwise final * * * may be reopened:

(b) [W]ithin 4 years after the date of the notice of the initial determination * * * upon a finding of good cause for reopening such determination or decision * * *."[3]

§ 404.958:

"'Good cause' shall be deemed to exist where:

"(c) There is an error as to such determination or decision on the face of the evidence on which such determination or decision is based."

While the regulation is couched in terms of reopening a decision otherwise final,[4] it also serves to identify decisions that should not be interposed to deny subsequent applications. A decision that is subject to being reopened provides an inappropriate bar. The dictates of equity and fundamental fairness that allow a decision containing error on the face of the evidence to be reopened preclude use of the same decision as a foundation for *res judicata*.

It is apparent that in 1943 Grose suffered severe physical impairment.[5] His unsuccessful venture in trucking followed by his unemployment casts doubt on his ability to engage in substantial gainful activity. Therefore, his competence to operate a paper route profitably is the crucial inquiry. Grose testified that he could not get out of his car and walk to his customers' houses. He managed to deliver the paper by throwing them to porches or leaving them in roadside tubes. Collection was a different matter. For this, as he explained in 1966, he relied on his wife or children.[6] It was error on the face of the evidence for the Secretary to attribute to Grose all the earnings from the paper route and to assume that Grose alone could operate the route, when uncontradicted evidence disclosed the necessity of help from his

3. The initial determination was made October 17, 1962. Within four years, on May 9, 1966, Grose filed another application. The regulations also provide for reopening at any time "for the purpose of correcting clerical error or error on the face of the evidence * * *." 20 C.F.R. § 404.957(c) (8).

4. The related problem of judicial review of an order denying a motion to reopen a final decision is discussed in Cappadora v. Celebrezze, 356 F.2d 1 (2d Cir. 1966).

5. In the 1962 proceedings the hearing examiner observed: "In the opinion of the Hearing Examiner, the claimant exhibited unusual fortitude and determination in making himself a useful member of society and becoming self-supporting following his severe impairment resulting from amputation of both legs, and his perseverance is to be admired."

6. In a statement accompanying his 1955 application, Grose said, "I operate the route by myself, although occasionally I have help from my wife."
In 1962 he testified, "[I]f I couldn't throw them [papers] or put them in the box, why I didn't take them, I couldn't accept business that I had to get out of the car and go to the house."
In 1966 he testified:

"Q They [wife and children] weren't with you every day, were they?
"A Well, not every day that I went around, but they did have to be along to collect, I couldn't do that at all.
"Q How often would you collect?
"A Once a month.

family. Cf. Hanes v. Celebrezze, 337 F. 2d 209, 215 (4th Cir. 1964).[7]

The principal evidence that Grose was able to engage in substantial gainful activity was the amount of his net earnings from his paper route. Error appears in the resolution of this important question. All of Grose's records were destroyed when his house burned before his first hearing. Consequently, he could make only the roughest estimate of his net earnings. He testified they ranged between $150 and $175 a month.[8] This estimate became an albatross about his neck. The examiner assumed as a fact that Grose could earn from $150 to $175 a month and accordingly held this level of self-employment demonstrated ability to engage in substantial gainful activity.[9]

The record, however, contains uncontested facts that must be given consideration in determining Grose's income. Grose worked seven days a week, eight hours a day. He drove to a town 25 miles from his home to pick up his papers. His route varied from 76 to as much as 142 miles a day. He received $5.00 a day for mileage. At various times he had from 152 to 205 customers. He paid 3¢ for each paper and sold it for 5¢. Based on these figures, Grose's net from the sale of papers—even when he had a maximum number of customers —was about $123.00 a month, and this is predicated on the unlikely assumption that $5.00 a day paid all costs of his transportation, including depreciation and repair of his truck.[10] These facts establish that it was error on the face of the evidence to base the crucial finding about the amount of Grose's monthly earnings upon an estimate which—on this record—is inherently inaccurate.

"Q Did you send your wife or children to get the money?

"A That's right."

The examiner recognized there was no conflict in Grose's testimony. He observed that his 1966 testimony was "in substantial conformity with the testimony given at the previous hearing."

7. Hanes, disabled by an accident, earned $125 a month as a building custodian. He testified his wife and son helped when he was feeling bad. A judgment denying him benefits was reversed and remanded to determine, among other things, the extent to which his family's assistance enabled him to perform his job.

8. The following colloquy occurred in the hearing on the 1961 application:

"Q [C]an you give me an approximation of the amount you made in those years, was it $2,000 or $3,000 or what?

"A Well, $2,000, I'd say, or maybe a little bit better. You see, there's the thing that I have to count there too, what money I had from the [accident] sort of was accounted along with that, you see it just kind of diluted along through that.

"Q Well, I'm just talking about what you earned on the paper route.

"A Well, I don't believe it went over $150 a month.

"Q But you say there were two years when you didn't make that much?

"A Yeah, but—

"Q Well, what's the minimum that you made a month?

"A I'd say $150 would be the least.

"Q Well, what's the most?

"A Well, $175.

"Q Was that net? That didn't count the expenses on your car?

"A That was above expenses, yes, sir."

At the hearing on the 1966 application, Grose testified:

"Q * * * At the last hearing you testified you earned from $150 to $175 a month above expenses, is that right?

"A Well, at this time it don't seem like I made that much, of course, I probably remembered better at that time."

In a statement supporting his 1955 application, Grose said:

"I am now delivering about 185 evening papers over 90 miles a day. I operate a ½ ton pickup truck. * * * This is a 7 days a week proposition. * * * My expenses will average about $100.00 a month. My gross income above costs of papers will amount to about $277.50 per month. This leaves me a net of $177.50 per month."

9. 20 C.F.R. § 404.1534(b) provides:

"An individual's earnings from work activities averaging in excess of $100 a month shall be deemed to demonstrate his ability to engage in substantial gainful activity in the absence of evidence to the contrary.

10. The record is sketchy. Information about the Sunday route and Grose's transportation expenses and allowances is incomplete. Grose was not represented by counsel at the administrative hearings.

The judgment of the district court is vacated, and this action is remanded for consideration of Grose's claim upon its merits. If the district judge decides the record should be supplemented, he may remand the case to the Secretary for further proceedings consistent with this opinion.