Ovis Ray BAXTER, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

Civ. A. No. C80–35A.

United States District Court,
N. D. Georgia,
Atlanta Division.

May 7, 1982.

Ovis Ray Baxter, pro se.

Lawrence E. Gill, Asst. U. S. Atty., Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

### I. INTRODUCTION

The plaintiff, Ovis Ray Baxter, brought this action to obtain judicial review of a final decision of the Secretary of Health and Human Services ("the Secretary") which denied the plaintiff's claim for a period of disability and disability insurance benefits ("the Title II claims") and supplemental security income ("SSI" or "the Title XVI claim") under sections 216(i), 223, and 1614(a)(3) of the Social Security Act ("the Act"), 42 U.S.C.A. §§ 416(i), 423, and 1382c(a)(3) (West 1974 & Supp. 1975–1980). The decision at issue was made by the Appeals Council on November 12, 1980, when it adopted a recommended decision of Administrative Law Judge ("ALJ") Rothbloom, denying the plaintiff benefits under both Titles II and XVI.

The plaintiff is 54 years old, and completed the sixth grade. (Tr. 12). He last worked in 1972. (Tr. 88). His work experience includes loading tractor-trailers, servicing appliances, and curing hams. The plaintiff alleges that he suffers from numerous disabling problems, including arthritis of the shoulders, legs and hands; shortness of breath even when engaged in only light exercise; difficulty lifting; and difficulty standing or sitting in excess of thirty minutes. The plaintiff also alleges that he has undergone throat surgery on two occasions and had a portion of his vocal chords removed, resulting in difficult speaking; that he has had ulcer and stomach problems; and that he has been taking medication for a nervous condition since 1974.

The plaintiff argues that the ALJ's decision denying him benefits is not supported by substantial evidence.

## II. JURISDICTION AND STANDARD OF REVIEW

■ As a preliminary matter, the court notes that the plaintiff's complaint predicates jurisdiction on section 205(g) of the Social Security Act, 42 U.S.C.A. 405(g) (West 1974 & Supp. 1981) and section 10 of the Administrative Procedure Act, 5 U.S.C. 706 (1976). The Supreme Court has ruled that the Administrative Procedure Act does not provide an independent grant of subject matter jurisdiction to review claims under the Social Security Act, *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Thus, the court agrees with the defendant that the court's jurisdiction over claims such as those here must be based solely on the provisions of the Social Security Act, 42 U.S.C.A. 405(g) (West 1974 & Supp. 1981) and 42 U.S.C.A. 1383(c)(3) (West 1974 & Supp. 1975–1980). *See Ellis v. Schweiker*, 662 F.2d 419 (5th Cir. 1981).

■■ The court's function in reviewing the final decision of the Secretary is not to try the case *de novo* or to reweigh the evidence, but rather to determine whether there is substantial evidence in the record considered as a whole to support the Secretary's findings, and whether the proper legal standards were applied to the fact-finding process. The Secretary's findings must be sustained if supported by substantial evidence and proper legal standards were applied. 42 U.S.C.A. § 405(g) (West 1974 & Supp. 1981); *Gaultney v. Weinberger*, 505 F.2d 943 (5th Cir. 1974); *Rivas v. Weinberger*, 475 F.2d 255 (5th Cir. 1973). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Breaux v. Finch*, 421 F.2d 687 (5th Cir. 1970).

In order to qualify for disability and SSI payments based upon disability, a plaintiff has the burden of producing sufficient evidence, medical or otherwise, to show that he was under a "disability" within the meaning of the Social Security Act. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Hart v. Finch*, 440 F.2d 1340 (5th Cir. 1971). An individual is considered to be disabled if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which could be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1) (1976). Moreover, the impairment must result from anatomical, physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that claimant is not only unable to do his previous work but cannot, considering his age, education, and work experience engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2), (3), 1382c(a)(3)(B), (C) (1976).

Because the plaintiff's Title II and Title XVI claims are based on separate periods of eligibility, and therefore on separate evidence, they will be individually reviewed.

## III. DISABILITY CLAIMS UNDER TITLE II

Section 205(g) of the Social Security Act authorizes federal judicial review of "any final decision of the Secretary made after a hearing to which [the claimant] was a party. . . ." The history of the plaintiff's benefits claims, revealed on the face of the record, indicates that the plaintiff has received not one, but two hearings [1] and two "final decisions" on his Title II claims. The 1980 decision now before the court is the second of these decisions. The Secretary does not contend that the decision on the first hearing raises any bar to a review of the decision on the second hearing, and he

---

1. In fact, the plaintiff had three hearings, but one, before ALJ Knox, is a nullity because of a tape recording failure and the consequent lack of a transcript.

has confined himself, as did the ALJ, to the inquiry of whether there was substantial evidence for the ALJ's findings of fact.

However, even though the parties have not addressed the issue, there is an important question as to the proper scope of the court's review of the most recent hearing and decision in light of the *res judicata* effects of the findings of fact established in the prior hearing and "final decision." More particularly, this record presents the issue of how courts should treat a claimant who receives an adverse ruling on a claim, but fails either to exhaust his administrative remedies and seek court review, or to petition to reopen his case pursuant to 20 C.F.R. § 404.987 (1981), and instead, refiles a similar, perhaps identical claim, pursuing it through a second hearing to judicial review without a challenge by the Secretary on *res judicata* grounds.

Section 205(h) of the Social Security Act, 42 U.S.C.A. § 405(h) (West Supp. 1981), states in pertinent part that:

"The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided...."

The review referred to in § 205(h) as "herein provided" is that described in section 205(g) of the Act, authorizing judicial review only if a claimant commences an action in a district court within sixty days, or such further time as the Secretary may allow, after exhaustion of administrative remedies and mailing of the notice of the Secretary's final decision to the claimant. The Secretary has established a sequential procedure providing for several levels of determinations and review of each claim. A determination becomes the Secretary's "final decision" when the claimant either exhausts or abandons the administrative process. *See* 20 C.F.R. § 404.900 *et seq.* (1981).[2]

Under ordinary circumstances, the Secretary has retained the sixty day period after mailing of a final decision notice as the period during which a claimant may seek judicial review. 20 C.F.R. §§ 404.981, 404.-982 (1981). Nonetheless, even if a claimant does not seek judicial review, or the review is adverse, the Secretary allows a claimant the opportunity to reopen his claim. 20 C.F.R. § 404.987 (1981). A claim may be reopened: (a) within twelve months of the notice of determination for any reason; (b) within four years of the date of notice for good cause; and (c) at any time if any of nine special circumstances, such as fraud or clerical error, affected the original determination.

Despite, or perhaps because of, the many levels of review prior to a final decision, and the opportunities to reopen a case after a final decision, the finality principles of section 205(h) are especially important. These principles are incorporated, in part, in a regulation of the Secretary, 20 C.F.R. § 404.957(c)(1) (1981), which empowers an ALJ to dismiss a request for a hearing on the basis of *res judicata.* Regulation 404.-957 does not, however, command dismissal of a second hearing when *res judicata* principles could apply. It merely states that "[a]n administrative law judge *may* dismiss a request for hearing ... [on *res judicata* grounds]...." The discretion given to an ALJ in determining whether to grant a requested hearing is appropriate because the record may not clearly reveal whether a claimant's second application for Title II benefits is identical to his first claim in all regards, for example, whether both claims are based on the same eligibility period.

If a hearing request is granted, however, and the existence of a prior decision and the identity of claims is established, there is considerable doubt as to the power of the ALJ, the Appeals Council, or a reviewing court to modify the decision in the prior hearing absent the grant of a petition to reopen. *See Wilson v. Califano,* 580 F.2d

---

2. It is possible to abandon a claim before requesting a hearing under 42 U.S.C.A. 405(b) (West Supp. 1981). If administrative appeals are not exhausted there can be no judicial review even though there is a final decision. 42 U.S.C.A. 405(g) (West 1974 & Supp.1981).

208, 210 (6th Cir. 1978) (once decision becomes final, even if not reviewed by district court, it may not be reviewed by a district court as part of its review of a subsequent decision), *citing Domozik v. Cohen*, 413 F.2d 5 (3d Cir. 1969); *Leviner v. Richardson*, 443 F.2d 1338 (4th Cir. 1971). *See also Myers v. Gardner*, 361 F.2d 343 (9th Cir. 1966).

While under Rule 8(c), the Federal Rules of Civil Procedure, *res judicata* is an affirmative defense which is waived if not asserted, in the context of Social Security Act proceedings, this rule does not automatically apply. The *res judicata* of the federal rules is based on judge-made, equitable principles, and waiver is therefore appropriate if the parties to a dispute do not raise the issue in a timely fashion. Under the Social Security Act, however, the principle of *res judicata* is an important, statutory element in the Congressionally mandated scheme of Social Security administration.

The Supreme Court has stated that "Congress' determination so to limit judicial review to the *original* decision denying benefits is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims. Our duty, of course, is to respect that choice." *Califano v. Sanders, supra*, 430 U.S. at 108, 97 S.Ct. at 985 (emphasis added). As the Supreme Court pointed out, the opportunity to reopen final decisions is afforded by the Secretary's regulations and not by the Social Security Act itself. If a claimant follows the appropriate regulations, see 20 C.F.R. 404.987 (1981), and has an *original* decision reopened, judicial review can follow. But barring this, the Social Security Act clearly prohibits a second *de novo* determination by the Secretary, or the courts, of a matter already "finally decided." *See Califano v. Sanders, supra* at 110, 97 S.Ct. at 987 (Stewart, J., concurring).

■ The fact that an ALJ did not invoke *res judicata* to bar a second *de novo* hearing cannot affect section 205(h)'s command to a court if the hearing record reveals a prior decision on an identical claim and no petition to reopen. Accordingly, *res judicata* can be invoked by the district court to put an end to litigation even though the ALJ did not rely on *res judicata*, but considered and denied a claimant's repetitive application on the merits. *Domozik, supra, cited in Wilson, supra* at 211.

Despite the opportunity to end repetitive litigation on *res judicata* grounds, some reviewing courts have adopted the practice of deeming repetitive applications to be petitions to reopen pursuant to 20 C.F.R. § 404.987 (1981), *see, e.g., Ellis v. Schweiker*, 662 F.2d 419 (5th Cir. 1981), and then considering the merits of the petition. *Grose v. Cohen*, 406 F.2d 823 (4th Cir. 1969). Other courts have proceeded to review a repetitive application on the merits, notwithstanding the *res judicata* issue. *See, e.g., Newborn v. Harris*, 602 F.2d 105, 106, n.1 (5th Cir. 1979). However, these practices began before the decision in *Califano v. Sanders, supra*, holding that the denial of a petition to reopen is not appealable unless it involves questions of constitutional dimension. After *Califano v. Sanders*, the vitality of these practices is subject to question.

In light of *Califano v. Sanders*, the administration of justice would be best served if the ALJ routinely inquired into the existence of prior decisions on identical claims. If any were discovered, the ALJ could allow the parties to submit evidence on a petition to reopen, and the ALJ could then decide the petition. If the decision were adverse to the claimant, courts would be relieved from the burden of handling cases Congress never intended courts to consider. *Califano v. Sanders, supra.*

In the absence of this inquiry by the ALJ, if the record plainly reveals a prior hearing and decision, a reviewing court would either have to fulfill the ALJ's role and address the issue of reopening the case, or remand to the ALJ.

The advantage of having the reviewing court address the issue of reopening the case is that a claimant would thereby receive speedy adjudication of his claim. The disadvantages of this option are first, that the court's decision would presumably be subject to appeal, a situation at odds with

the teaching of *Califano v. Sanders*; and second, that the parties should be provided an opportunity to present evidence and file briefs on the issue of reopening the original case, a process best undertaken before an ALJ in the first instance. While remand to an ALJ delays resolution of a particular case, adherence to the requirement that ALJs explicitly decide petitions to reopen by nonappealable orders increases the efficiency of the entire Social Security appeals process.[3]

The court now turns to the facts of the instant case, and the application to those facts of the *res judicata* principles discussed above.

The plaintiff first sought Title II benefits in February 1974. His insured status expired March 31, 1974. Accordingly, he had to establish a disability which existed by March 31, 1974. The plaintiff's claim was administratively denied, reconsidered, and denied again. The plaintiff then requested a hearing, and one was subsequently held before ALJ Windels. In a decision dated May 29, 1975, the ALJ found that the plaintiff was not disabled for purposes of his Title II claims, (Tr. 252–256). The plaintiff delayed filing his request for an Appeals Council review until March, 1976, over seven months after the sixty day period for filing a notice of appeal had run. The appeals council did not find good cause for the delay, and dismissed the request for review as untimely. (Tr. 261–2). No further appeal was taken.

On September 30, 1977, the plaintiff refiled a claim for Title II benefits based on the same eligibility date as his first application. (Tr. 263). As before, the claim was administratively denied, reconsidered, and denied. Once again, the plaintiff sought a hearing. A hearing was held in September 1978, before ALJ Knox. The plaintiff's Title II claims were denied, the Appeals Council affirmed the ALJ's decision, and a complaint was filed January 8, 1980 in this court.

Because of a poor tape recording from the hearing before ALJ Knox, a hearing transcript could not be prepared. Accordingly, the case was remanded, and a third *de novo* hearing was held, August 28, 1980, this time before ALJ Rothbloom.[4] In a recommended decision adopted by the Appeals Council, the plaintiff's Title II claims were denied once again. The case was returned to this court in March, 1981.

The record on this case shows on its face that the Title II claim now before the court was "finally decided" without appeal in 1975. (Tr. 261–2). No evidence that a petition to reopen was filed. The court notes that the claim now before the court was filed in September 1977, more than one year, but less than four years, after the final decision on the original claim. Accordingly, even if the plaintiff's current claim is deemed a petition to reopen, the plaintiff must show special circumstances or good cause in order to prevail on the petition. 20 C.F.R. §§ 404.988, 404.989 (1981). The court also notes that only one new piece of evidence on the plaintiff's condition prior to April 1, 1974, not available at the original hearing, was submitted at the subsequent hearings. (Tr. 364). This evidence dealt solely with dental work which was not in any way connected with the plaintiff's alleged disability.

In light of the requirements of section 205(h) of the Act and the holding of *Califano v. Sanders, supra,* and because neither the parties nor the ALJ addressed the *res judicata* issues present on the face of the record, the Title II claim should be remanded for clarification of the *res judicata* effect of the 1975 hearing. If, as it

---

3. Of course, *res judicata* in the administrative process is not encrusted with the rigid finality that characterizes the precept in judicial proceedings. *Grose v. Cohen,* 406 F.2d 823, 824 (4th Cir. 1969). There will be occasions when courts can and should decide a petition to reopen, for example, if the petition is filed within twelve months of the original decision. Ordinarily, however, courts should not undertake to adjudicate a petition to reopen, or allow claimants a second review of their case, when Congress did not intend to make these tasks part of the courts' responsibilities under the Act.

4. See note 1, *supra.*

appears, the 1975 claim is found to be identical to the 1977 claim, so the 1975 decision is binding, the ALJ should then decide whether the 1977 claim should be treated as a petition to reopen, and whether as such, it should be granted.

## IV.   DISABILITY CLAIMS UNDER TITLE XVI

■ The plaintiff applied for SSI benefits under Title XVI in 1974 and 1977, at the same time he applied for disability benefits under Title II. The SSI applications, which have the same procedural history as their Title II counterparts, were denied at each stage of determination or review. However, the *res judicata* issues raised in connection with the plaintiff's Title II claims are not as critical here, since Title XVI benefits are not tied to the attainment of a particular period of insurance eligibility, and *de novo* applications may always be filed, effective from the date of application to the date of final decision, or the date of court review, whichever is later. 20 C.F.R. § 416.330 (1981). Accordingly, the court must consider whether there was substantial evidence for the ALJ's conclusion that plaintiff was not disabled at any point from September 30, 1977 forward.

It is evident that many of the plaintiff's medical and psychological problems developed or worsened after May 29, 1975, the date the plaintiff's prior SSI claim was finally decided. Citing his changed condition, the plaintiff maintains that even if he was not disabled by May 29, 1975, the ALJ lacked substantial evidence to conclude that he was also not disabled by September 30, 1977, the date of reapplication, or August, 1980, the date of his most recent hearing.

The plaintiff asserts that in reaching his decision the ALJ failed to consider all of the medical evidence and erred in according greater weight to the report of Dr. Hudgins, (Tr. 332), a consultative physician, than he did to the reports of the plaintiff's treating physicians, Dr. Hamilton, (Tr. 230), and Dr. Abellera, (Tr. 241). Specifically, plaintiff objects that the ALJ erred in concluding that the treating physicians' opinions were not supported by sufficient clinical findings, and by failing to refer at all to the reports of Drs. Hamilton and Abellera.

### A.   Review of the Physicians' Reports

■ The opinion, diagnoses, and medical evidence of the treating physician should be accorded considerable weight. *Perez v. Schweiker*, 653 F.2d 997 (5th Cir. 1981). However, a physician's conclusory statement on the ultimate issue of disability is not binding on the ALJ. The weight to be given a physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence about the severity and probable duration of the individual's impairment. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981); *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

The reports of Drs. Hamilton and Abellera were both considered by ALJ Windels in his 1975 decision. Since these reports date from October, 1973 and February 1975 they are not probative of any change in the plaintiff's condition after May 1975, which is the period relevant to this review. Several of the reports of Dr. Murray (Tr. 237, 244) were also made prior to May 1975. The report of Ms. Wilson, a physician's assistant, is of minimal probative value, since she is not qualified to give medical opinions, and does not refer to any specific doctors' opinions, but merely states that in "our medical opinion" the plaintiff is unable to maintain gainful employment. Dr. Lee's report states that "since 1973 [the claimant's] condition has remained stable." (Tr. 344).

While the treating physicians refer to chronic bronchitis, chronic obstructive pulmonary disease, chronic gastritis or dyspepsia, acrophagia, chronic osteoarthritis, and anxiety (Tr. 344, 359–62), there is substantial evidence that these conditions, though undoubtedly present at various times, were not disabling, either singly or in combination (Tr. 324, 325, 328/345–6, 363–4). The reports of Drs. Hudgins and Prince (Tr. 332–8, 365–9) confirm various medical and psychological problems, but give further evidence that these problems are not so severe

as to prevent all substantial gainful activity. Furthermore, the reports of Drs. Hudgins and Prince were made after most of the treating physician's reports relied on by the plaintiff.

■ The mere presence of medical problems does not constitute disability; there must also be disabling effects. The plaintiff has not directed the court to any clinical evidence establishing disabling effects from his medical problems.

The ALJ made a detailed review of the medical evidence (Tr. 11–24); his conclusions meet the substantial evidence test and must stand.

B. Pain

■ Plaintiff's allegations of pain, like all matters of fact, are not to be accepted blindly and must be evaluated against the other evidence. *Laffoon v. Califano*, 558 F.2d 253 (5th Cir. 1977). The question whether the applicant is able to work despite some resulting pain is within the province of the administrative agency and is to be upheld if supported by substantial evidence. *Newborn v. Harris*, 602 F.2d 105 (5th Cir. 1979). The ALJ may properly challenge credibility of pain testimony. *Allen v. Schweiker*, 642 F.2d 799 (5th Cir. 1981). The plaintiff has not shown where in the record it is established by recognized diagnostic techniques that he suffers severe pain from a medically recognized impairment. *See Aubeuf v. Schweiker*, 649 F.2d 107, 112 (2d Cir. 1981). He relies primarily on his own testimony of pain, and while this evidence must be considered, *see Rodriguez v. Schweiker*, 640 F.2d 682, 685 (5th Cir. 1981), it is not sufficient to establish a disability in light of the medical evidence to the contrary. *See Aubeuf, supra.* The medical evidence indicates that plaintiff

was not in such severe pain that it would impair his capacity to perform basic work related functions. (Tr. 335, 360, 362–3). To the extent there was any conflicting evidence, the determination of credibility is to be made by the ALJ.[5]

C. Effect of Medication

The plaintiff's final objection to the ALJ's report is that ALJ Rothbloom did not accept the plaintiff's testimony that the prescribed medication, Vistaril, which the plaintiff took for his nervousness, produced drowsiness (Tr. 117). The plaintiff only began taking Vistaril in May, 1980, less than four months before the hearing before ALJ Rothbloom. Thus, the available evidence on the plaintiff's reaction to Vistaril was more limited than the evidence on some of the plaintiff's longer standing complaints. The ALJ explained the basis for his conclusion as follows:

At the hearing when the claimant was asked by the Administrative Law Judge why he could not work, he did not allude to any side effects from his "nerve" medication. And, in describing his daily activities he did not indicate that his medication interfered with his daily functioning. Subsequently, however, he stated that the "nerve" medicine which he takes three times a day causes him to become drowsy in about 15 minutes and then he sleeps for 30 minutes to one hour. Nowhere in the claimant's medical records is there any indication that the claimant's medication is causing the condition described by the claimant. The claimant produced a medication bottle which indicated that it contained Vistaril. A warning notice on the bottle contained the

---

5. In making his determination an ALJ can rely on impressions derived from a claimant's testimony and demeanor. *Good v. Weinberger*, 389 F.Supp. 350, 356 (W.D.Pa.1975). An ALJ's conclusion, however, must be rationally related to his observations. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). An ALJ may not make medical conclusions he is not qualified to make, or discredit a claimant's credibility because of the claimant's failure to exhibit what the ALJ considered observable manifestations

usually expected from those in severe pain. Based on this standard, the ALJ's observation of the plaintiff's manifestations of pain at his hearing is of little, if any, probative value. The hearing process should not be structured to encourage claimants to a display of histonics. *See Aubeuf v. Schweiker*, 649 F.2d 107, 113 & n.7 (2d Cir. 1981). The court's finding that the ALJ's conclusion is supported by substantial evidence is based solely on a review of the medical evidence.

usual advice against operating automotive equipment or "dangerous machinery." In June and July 1980 the claimant reported that he was "doing well" on Vistaril. (Tr. 22).

The ALJ made a credibility judgment that he did not believe the plaintiff's testimony that Vistaril was producing pronounced drowsiness. The only scientific evidence presented by the plaintiff was the pharmacist's warning that Vistaril might cause drowsiness. The ALJ's decision did not amount to a medical conclusion that Vistaril could not cause drowsiness. It simply resolved conflicting evidence and inferences, a task within the ALJ's province. The burden was on the plaintiff. The court cannot reverse the ALJ's determination simply because it is possible to draw logical inferences that support a contrary conclusion.[6]

If the plaintiff reapplies for SSI benefits at a future date, there is certainly room for him to develop the record as to Vistaril's effects. In developing the record the plaintiff may introduce medical or scientific evidence beyond that of a conditional prescription warning. Further, the plaintiff might call his brother or nephew to corroborate his testimony about falling asleep. However, it is not the court's role at this juncture to question the plaintiff's decision not to develop the record in a particular way, especially where the plaintiff was represented by an attorney. Based on the record, the ALJ's determination had a rational, articulated basis and meets the substantial evidence test.

The plaintiff's objections to the opinion of Dr. Hecker, the vocational rehabilitation expert, are without merit. The ALJ's hypothetical, which reflected conclu-

sions based on substantial evidence, assumed that the plaintiff's residual functional capacity permitted sustained work, despite his combination of impairments. (Tr. 142, 147–157).

## V. CONCLUSION

The case is remanded solely for a determination of the *res judicata* effects of the 1975 decision on the plaintiff's Title II claims. If the ALJ does not grant a petition to reopen the 1975 hearing decision, the case is concluded. If a petition to reopen is granted, or the 1975 decision is somehow found to be nonbinding, this court will consider whether there was substantial evidence to deny the plaintiff's Title II claims.

---

**6.** The ALJ's statement that the plaintiff did not appear drowsy at the hearing (Tr. 14, 25) has no probative value since the plaintiff did not take Vistaril the day of the hearing (Tr. 14). Once again the court must point out that an ALJ should not undertake to make adverse conclusions about a claimant's medical condition based on his observations of the claimant's behavior at the hearing. *See* note 5, *supra.* In

this instance, despite the unnecessary reference to the plaintiff's non-drowsy behavior at the hearing, the ALJ's determination was rationally related to other observations and evidence, such as the absence of any complaints of drowsiness by the claimant to his doctors. In any event, the plaintiff's medical evidence was not sufficient to carry his burden.