Dwayne W. **REICHARD**, Plaintiff,

v.

Jo Anne **BARNHART**, Commissioner
of Social Security, Defendant.

Civ.A. No. 5:02–0297.

United States District Court,
S.D. West Virginia,
Beckley Division.

Sept. 29, 2003.

Don M. Stacy, Beckley, WV, for plaintiff.

Kelly R. Curry, Assistant United States Attorney, Charleston, WV, for defendant.

### *MEMORANDUM OPINION AND ORDER*

VANDERVORT, United States Magistrate Judge.

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's Applications for Disability Insurance benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433, 1381–1383f. Presently pending before the

Court are cross-Motions for Judgment on the Pleadings (Document Nos. 10 and 15) and Plaintiff's letters to opposing counsel and the Court, which the Court construes as Motions to Remand (Document Nos. 12 and 13.). Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Dwayne W. Reichard (hereinafter referred to as "Claimant"), filed Applications for SSI and DIB on August 27, 1999 (protective filing date), alleging disability as of August 16, 1999, due to back injury, fracture, soreness, swelling and fluid build up. (Tr. at 114–17, 309–12, 89.) The claim was denied initially and upon reconsideration. (Tr. at 83–87, 90–91, 314–18, 321–23.) On July 27, 2000, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 92.) The hearing was held on January 23, 2001, before the Honorable Arthur L. Conover. (Tr. at 39–79.)[1] By Decision dated February 23, 2001, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14–26.)

Consistent with the five step "sequential evaluation" for the adjudication of disability claims, 20 C.F.R. §§ 404.1520, 416.920 (2002), the ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date, August 16, 1999. (Tr. at 18, 24, Finding No. 2.) At the second and third steps, the ALJ found that Claimant suffered from the severe impairments of "residuals of a fracture of the vertebra at the L–3/L–4 level of the back and seroma" and determined that, while severe, the impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1. (Tr. at 18–19, 24, Finding No. 3.) The ALJ then found that Claimant had the residual functional capacity to perform light work with additional non-exertional limitations, including pain which erodes Claimant's ability to concentrate. (Tr. at 19, 24, Finding No. 5.) At the fourth level, the ALJ found that Claimant could not return to his past relevant work as a tree trimmer. (Tr. at 22, 24, Finding No. 6.) Nonetheless, the ALJ found, based upon vocational expert testimony, that Claimant could perform jobs such as security guard, surveillance systems monitor, assembler and inspector (sedentary), which existed in significant numbers in the national economy. (Tr. at 23, 25, Finding No. 12.) On this basis, the ALJ concluded that "claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision." (Tr. at 25, Finding No. 13.)

On March 29, 2001, Claimant requested that the Appeals Council review the ALJ's decision. (Tr. at 14–26.) The ALJ's Decision became the final decision of the Commissioner on February 6, 2002, when the Appeals Council denied Claimant's request for review. (Tr. at 9–10.) On April 2, 2002, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Claimant filed a Motion for Judgment on the Pleadings on July 18, 2002. (Document No. 10.) Defendant filed a Motion for Judgment on the Pleadings thereafter.[2] (Document No. 15.) Claimant filed two

---

1. A first hearing was held on October 13, 2000, but the hearing tape was blank. (Tr. at 2.) Additionally, ALJ Conover stated at the second hearing that the first hearing was continued to allow Claimant to retain counsel. (Tr. at 41.)

2. Defendant's original Motion for Judgment on the Pleadings dated August 14, 2002, and intended for filing with the Clerk of the Court, was apparently inadvertently sent to the office of the undersigned where it was mistaken for the Court's courtesy copy and kept in the internal office file. Upon recent discovery of the error, the Court provided the original

letters with the Court dated December 5, 2002, and February 19, 2003, informing the Court that Claimant was granted benefits on a subsequent application. (Document Nos. 12 and 13.) The Court construes these letters as Motions to Remand. Defendant filed a response to these letters on May 16, 2003. (Document No. 14.)

Apparently, Claimant applied again for SSI and DIB on April 10, 2001, and May 8, 2001, respectively, while the instant case was pending at the Appeals Council level. Following a hearing, ALJ Arthur L. Conover (who decided Claimant's first applications) found Claimant disabled as of March 1, 2001, only a few days after his February 23, 2001, decision finding that Claimant was not disabled through February 23, 2001. A copy of this second decision, dated November 27, 2002, is attached to Claimant's first letter-motion. (Document No. 12.) ALJ Conover found in the second

decision that Claimant could perform the exertional demands of light work, but that severe pain "on a daily basis seriously erodes the claimant's ability to concentrate on and attend to single tasks, and to sustain a full work day at either the light or sedentary exertional level." (November 27, 2002 Hearing Decision, p. 5, attached to Plaintiff's letter-motion, Document No. 12.) The ALJ found that Claimant's "constant pain in the back has become much worse since the prior decision by the undersigned ...." (November 27, 2002, Hearing Decision, p. 4.)

Clearly, as the Appeals Council's denial of request for review of the instant claim was dated February 6, 2002, the Appeals Council, although having additional evidence submitted by Claimant, did not have Judge Conover's November 27, 2002, decision on February 6, 2002, when it accepted his February 23, 2001, decision.[3]

document to the Clerk's Office where it has been filed as Document Number 15. As the Certificate of Service reflects that Plaintiff was sent a copy of the Motion and the Motion has now been filed, the Court finds no harm to either party.

3. Indeed, as apparently Claimant's second application was denied initially and on reconsideration, consideration at the hearing level was deferred pending the Appeals Council's consideration of the first ALJ decision pursuant to the Social Security Administration's December 30, 1999, Emergency Message–99147 stating a new procedure in processing subsequent claims as follows:

1. Effective immediately, when a prior claim is pending at the AC [Appeals Council], we will send: subsequent disability claims to the DDS [Disability Determination Services] for development and adjudication regardless of whether they are filed under the same or a different title than the prior claims pending at the AC. * * *
2. *The DDS will limit any favorable determination on the subsequent claim to the period beginning with the day after the date of the ALJ's decision. If a subsequent claim results in a favorable determination, includ-*

*ing a later onset or closed period of disability determination, the determination will be effectuated with an onset date no earlier than the day after the ALJ decision on the prior claim. After effectuation of the determination, the subsequent claim will be sent to the AC to determine if it contains new and material evidence relating to the period that was before the ALJ on the prior claim.*
3. If the DDS denies the subsequent claim at the initial level, the claimant may appeal the determination to the reconsideration level, and the DDS will process the claim normally.
4. *If the reconsideration determination is unfavorable, the claimant may appeal the determination to the hearing level. At that stage, the hearing office (HO) will defer action on the new request for hearing until the AC completes its action on the prior claim.* (Emphasis added.) This policy statement respecting processing subsequent claims can be found at *www.ssas.com. See Adkins v. Barnhart,* 2003 WL 21105103 *3 (S.D.W.Va.); *Barrientoz v. Massanari,* 202 F.Supp.2d 577, 587 (W.D.Tex.2002) ("The purpose of SSA–EM–99147 is to expedite the consideration of prior claims once a subsequent award of benefits is granted and the claimant maintains the evidence on which it was based relates to the

Although not cited in this Claimant's letter motions to remand, other Claimants have pointed out that the Court has remanded cases in the past under similar circumstances citing as a basis the Fourth Circuit's decision in *Lively v. Secretary of HHS*, 820 F.2d 1391 (4th Cir.1987). On October 19, 1981, an Administrative Law Judge denied Mr. Lively's first application for disability benefits because he was found to be capable of light work and he had not reached the age of 55 and therefore did not qualify as a person of "advanced age" under the applicable Grids. Mr. Lively turned 55 years old on November 3, 1981, several weeks after the ALJ's decision. He appealed the ALJ's decision denying his application unsuccessfully through the District Court level. On December 14, 1983, about two years and two months after the ALJ issued the decision denying Mr. Lively's first application for disability benefits, Mr. Lively made a second application. Once again, an ALJ found Mr. Lively not disabled. The ALJ did not discuss the first decision that Mr. Lively could do light work but found that he "retained the functional capacity for the performance of work activity at any exertional level on and prior to December 31, 1981." *Lively*, 820 F.2d at 1392.[4] Mr. Lively appealed this decision without success through the District Court level, but the Fourth Circuit Court of Appeals reversed and remanded for entry of judgment in favor of Mr. Lively. The Court stated as follows:

> Congress has clearly provided by statute that res judicata prevents reappraisal of both the Secretary's findings and his decision in Social Security cases that have become final, 42 U.S.C. § 405(h), and the Courts have readily applied res judicata to prevent the Secretary from reaching an inconsistent result in a second proceeding based on evidence that has already been weighted in a claimant's favor in an earlier proceeding. *Gavin v. Heckler*, 811 F.2d 1195, 1200 (8th Cir.1987). In the present case, it is true that the prior administrative proceeding did not result in a decision favorable to the appellant. Thus, *Gavin* is not strictly controlling. The statute upon which *Gavin* rests, though, 42 U.S.C. § 405(h), gives finality to *findings*, as well as decisions, made in previous proceedings between the parties.

*Id.* (Emphasis in decision.) The Court concluded as follows:

> The first ALJ found in 1981, that plaintiff was limited to light work, and the Secretary successfully defended that finding on judicial review. Some two weeks after appellant was found limited to light work, he became 55 years of age.

---

time period for his prior claim.") Also in accordance with this policy, ALJ Conover was compelled to find upon concluding that Claimant's second applications should be granted, that the date of onset of Claimant's disability was, at the earliest, the day after ALJ Conover issued his first decision. *See also* SSA POMS SI 04040.025, 2002 WL 1879213 (SSA–POMS), specifying the procedure when a subsequent claim for SSI is filed. If there is a favorable decision on a subsequent application, the decision is to be faxed immediately to the AC. It is noted that "[t]he AC will consider the evidence on the subsequent application to determine whether there is new and material evidence relating to the prior claim." It is further noted that "the AC may also conclude that the favorable determination on the subsequent application was incorrect. In such cases, the AC may exercise the Agency's authority under existing regulations to reopen the subsequent allowance. The AC may vacate the ALJ decision on the prior claim, consolidate the prior and subsequent claims, and remand both to the ALJ for further proceedings, including a new decision."

4. The ALJ apparently concluded, without regard for the ALJ's prior finding that Mr. Lively was capable of light work, that he was capable of medium work and hence not disabled. *See* 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 2 and Table No. 3.

It is utterly inconceivable that his condition had so improved in two weeks as to enable him to perform medium work. Principles of finality and fundamental fairness, drawn from 405(h) as discussed above, indicate that the Secretary must shoulder the burden of demonstrating that the claimant's condition improved sufficiently to indicate that the claimant was capable of performing medium work. *Cf. Dotson v. Schweiker,* 719 F.2d 80 (4th Cir.1983). Certainly, there was no evidence of any such miraculous improvement, and, as *Gavin* makes clear, 811 F.2d at 1200, such evidence, not considered in the earlier proceeding, would be needed to sustain a finding contrary to the final earlier finding.

*Id.* The Court concluded that "[b]ecause the appellant was limited to light work when he attained 55 years of age, he was entitled to benefits on his second application therefor." *Id.*

**5.** In his second applications, Mr. Albright sought benefits, as he had in his first applications, for the period from March 31, 1990, through May 28, 1992, the date of the ALJ's Decision denying his first applications. In considering Mr. Albright's second applications, the ALJ dismissed his claims for this period, and the Fourth Circuit regarded the dismissal entirely proper. *Albright,* 174 F.3d at 476 n. 4. The decision upon his first applications had become final.

**6.** After the Fourth Circuit's decision in *Albright,* the Social Security Administration issued Acquiescence Ruling 00–1(4). In view of *Albright,* the Social Security Administration resolved as follows:

When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a

In *Albright v. Commissioner of Social Sec. Admin.,* 174 F.3d 473 (4th Cir. 1999)(King, Circuit Judge), the Fourth Circuit distinguished *Lively.* Mr. Albright filed applications for DIB and SSI on April 17, 1991, claiming onset of disability on March 31, 1990. *Id.* at 474. By Decision dated May 28, 1992, an ALJ concluded that Mr. Albright was not entitled to benefits because he was able "to perform a full range of work at all exertional levels without any identifiable functional limitations of any sort[.]" *Id.,* at 474 n. 1. Mr. Albright did not appeal. Rather, he filed again for DIB and SSI in November and December, 1992.[5] On October 26, 1994, an ALJ again denied Mr. Albright's applications without evaluating his physical condition on the basis of Social Security Acquiescence Ruling 94–2(4) modeled after the Fourth Circuit's decision in *Lively.*[6] The Ruling required that an ALJ adopt the

fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

Where the prior finding was about a fact which is subject to change with the passage of time, such as a claimant's residual functional capacity, or that a claimant does or does not have an impairment(s) which is severe, the likelihood that such fact has changed generally increases as the interval of time between the previously adjudicated period and the period being adjudicated increases. An adjudicator should give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim, e.g., a few weeks as in Lively. An adjudicator generally should give less weight to such a prior finding as the proximity of the period previously adjudicated to the period being adjudicated in the subsequent claim becomes more remote, e.g., where the relevant time period

findings of an ALJ in consideration of a prior application which was finally adjudicated "in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding." [7] *Id.*, at 474–75. In consideration of Mr. Albright's further applications, the ALJ concluded that the Ruling required the denial of benefits because there was no new and material evidence regarding the severity of the alleged impairment. *Id.*, at 475. Mr. Albright appealed, and the District Court granted his Motion for Summary Judgment and remanded his claim for *de novo* consideration finding that Social Security Acquiescence Ruling 94–2(4) interpreted *Lively* too broadly. *Id.* The Fourth Circuit affirmed stating as follows:

> Rather than signaling a sea change in the law of preclusion, the result in *Lively* is instead best understood as a practical illustration of the substantial evidence rule. In other words, we determined that the finding of a qualified and disinterested tribunal that Lively was capable of performing only light work as of a certain date was such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence. To have held otherwise would have thwarted the legitimate expectations of claimants—and, indeed, society at large—that final agency adjudications should carry considerable weight. Even more importantly, judicial ratification of the SSA's "bait-and-switch" approach to resolving Lively's claim would have produced a result reasonably perceived as unjust and fundamentally unfair.

*Id.*, at 477–78 (Footnotes omitted.). *See also Drummond v. Commissioner of Social Security*, 126 F.3d 837, 841–42 (6th Cir.1997), discussing and relying upon *Lively* to conclude that "[j]ust as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." It is clear therefore that the Court cannot affirm a decision reached mainly through strict adherence to the administrative regulatory scheme and without due consideration for substantial new evidence of record.

### *ANALYSIS*

Pursuant to 42 U.S.C. § 405(g), remand is warranted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" The Fourth Circuit has stated that "[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins v. Secretary, Dep't of Health & Human Services*, 953 F.2d 93, 96 (4th Cir.1991)(*en banc*). The new evidence must "relate to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). This does not mean that the evidence had to have existed during that period. Rather, evidence must be considered if it has any bearing upon whether the Claimant was disabled during the relevant period of time. *See Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir.1987); *Cox v. Heckler*, 770 F.2d 411, 413 (4th Cir.1985); *Leviner v. Richardson*, 443 F.2d 1338, 1343 (4th Cir.1971).

exceeds three years as in Albright. In determining the weight to be given such a prior finding, an adjudicator must consider all relevant facts and circumstances on a case-by-case basis.

7. Social Security Rulings which are interpretive do not have the force and effect of law and are therefore not binding on courts. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

■ The undersigned finds that ALJ Conover's decision finding disability commencing less than a week after he first pronounced that Claimant was not disabled is new and material evidence. ALJ Conover reached his decision in the adjudication of Claimant's second applications. His finding that Claimant was disabled only a few days after his first decision was issued begs the question whether Claimant was actually disabled before that during the period of time relevant to consideration of Claimant's first application. A review of ALJ Conover's second decision shows that some of the evidence he considered was in the record before him on the first applications and/or before the Appeals Council. Simply in consideration of the finding that Claimant became disabled a few days after ALJ Conover issued his first decision, the undersigned finds that there is a reasonable possibility that the evidence considered by ALJ Conover in reaching his second decision might well have changed the outcome in this case as it was before him the first time. It is not in any way evident from the current record in this case how Claimant became disabled less than a week after ALJ Conover's first decision. Interestingly, in the second decision, ALJ Conover found that Claimant's back pain had become "much worse" since the prior decision, and cited a March 20, 2001, medical examination. (November 27, 2002 Hearing Decision, p. 4.) Further, ALJ Conover in the second decision gave controlling weight to the opinion of Claimant's treating physician, Dr. Joan Worthington, that Claimant was disabled and had been disabled since August 16, 1999. (November 27, 2002 Hearing Decision, p. 5.) He found that this opinion was supported by the testimony of the medical expert at the administrative hearing and by the opinion of Dr. Paul Bachwitt. (November 27, 2002 Hearing Decision, p. 5.) Accordingly, this case must be remanded so that ALJ Con-

over's second decision and the documents upon which it is based can be examined to determine if modification of ALJ Conover's first decision is in order in this case.

The Commissioner argues that remand is improper because the "fact that Plaintiff may have become disabled after the period at issue in this case is irrelevant and does not merit remand pursuant to sentence six of 42 U.S.C. § 405(g)." (Def.'s Objections, Doc. No. 14, p. 2.) In support of this proposition, Claimant cites *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir.2001). In *Bruton*, the claimant was found not disabled on his first application for benefits. *Bruton*, 268 F.3d at 826. The claimant appealed to District Court, and while his appeal was pending, filed a second application for benefits, which was granted by an ALJ. *See id.* Claimant moved the District Court to remand his pending case, arguing that the second decision was new and material evidence relevant to the first application. *See id.* at 827. The motion to remand was denied and the claimant appealed to the United States Court of Appeals for the Ninth Circuit. *See id.* The Ninth Circuit also disagreed with the claimant, finding that the second application "involved different medical evidence, a different time period, and a different age classification." *Id.* The Court found that the second ALJ decision was therefore not inconsistent with the first decision denying the application. *See id.*

First, this Court notes that it is not bound by precedent outside of the Fourth Circuit. Additionally, in the *Bruton* case, it is unclear whether the claimant was deemed disabled as of a date shortly after the date of the first ALJ decision, although it can be presumed that he was. It is also unclear whether in the *Bruton* case any of the medical evidence overlapped. Additionally, the Claimant in *Bruton* had a change in age classification, possibly accounting for the finding of subsequent dis-

ability. In the instant case, the ALJ in his second decision finding disability relied upon a finding that Claimant's pain had significantly worsened, and relied heavily upon a statement from a treating physician that Claimant had been disabled since August 16, 1999, his alleged onset date in the original applications. The Court therefore distinguishes *Bruton.*

In consideration of the authorities addressed by the Court and cited by parties in other such cases for and against remand, the Court also finds that this case is clearly factually and procedurally quite different from *Lively* and *Albright.* In this case, the ALJ's decision was favorable upon Claimant's second applications, not the first as in *Lively.* ALJ Conover's decision upon the Claimant's second applications is final in this case whereas in *Lively* the later decision was not. ALJ Conover's first decision upon Claimant's first application is obviously still subject to review and therefore not final. This case is therefore the photographic negative of *Lively.* Thus, the undersigned finds that *Lively* and *Albright* are plainly distinguishable.

This notwithstanding, the undersigned finds the logic of *Lively* as it was explained by the Court in *Albright* generally compelling. Final decisions of Administrative Law Judges based upon substantial evidence must receive full consideration and be assigned weight as may be appropriate in view of the circumstances under which they are issued. Thus, *res judicata* applies to findings and decisions on the merits which become final as a consequence of a claimant's exhaustion of or failure to pursue administrative or judicial review after notice of an adverse decision. *Grose v. Cohen,* 406 F.2d 823, 824 (4th Cir.1969)(Referring to the Social Security Act and Regulations, the Court stated that "[o]rdinarily an administrative decision becomes final unless a civil action is filed in district court within 60 days.")[8] In *Live-*

---

**8.** The Court in *Grose v. Cohen, supra,* 406 F.2d at 825, found in view of Social Security Regulations pertaining to reopening final decisions, now 20 C.F.R. §§ 404.987—404.989, that "[t]he regulations recognize that it is undesirable to attribute finality to every administrative decision." The Fourth Circuit stated further as follows:

> While the regulation is couched in terms of reopening a decision otherwise final, it also serves to identify decisions that should not be interposed to deny subsequent applications. A decision that is subject to being reopened provides an inappropriate bar. The dictates of equity and fundamental fairness that allow a decision containing error on the face of the evidence to be reopened preclude use of the same decision as a foundation for res judicata.

*Id.* (Footnote omitted.); *See also Leviner v. Richardson,* 443 F.2d 1338, 1343 (4th Cir. 1971)("A prior administrative determination should not ... be res judicata where new and material evidence is offered which is of sufficient weight that it may result in a different determination.") The current Regulations are quite similar to those considered by the Court in *Grose.* 20 C.F.R. § 404.988(a) and (b) provide as follows:

> A determination, revised determination, decision, or revised decision may be reopened—
> (a) Within 12 months of the date of the notice of the initial determination, for any reason;
> (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case[.]

20 C.F.R. § 404.989(a)(3) provides that "[w]e will find that there is good cause to reopen a determination or decision if* * * (3) The evidence that was considered in making the determination clearly shows on its face that an error was made." It is also noteworthy that these days many cases remain before the Appeals Council for more than twelve months. Nothing prohibits claimants from attempting to reopen decisions while they are pending in the Appeals Council. Further, nothing prohibits claimants from filing subsequent applications, as Claimant in this case did, while adverse rulings are pending review in the Appeals Council.

*ly*, for example, the finding in the first and final decision of the ALJ that Mr. Lively was capable of sedentary work took precedence. In this case, ALJ Conover's unfavorable decision upon Claimant's first applications cannot because it is still under review. The favorable second decision of ALJ Conover upon Claimant's second applications does have precedential value, however, but only by its terms beginning March 1, 2001, less than one week after he issued his decision upon Claimant's first application.

Thus, the Court has before it ALJ Conover's conclusion on February 23, 2001, that "claimant was not under a disability, as defined in the Social Security Act, at any time through the date of this decision," which remains subject to review, and his later final decision that Claimant was disabled beginning a few days later on March 1, 2001. There is and can be no question therefore that Claimant was disabled on March 1, 2001, and the question whether Claimant was disabled on February 23, 2001, remains open. ALJ Conover's final decision including the evidence which he considered is cognizable as evidence related and material to the question whether Claimant was disabled at any time during the period covered by the first deci-sion.[9] The new evidence relates to the prior time period because of its continuity and its possible bearing upon whether Claimant was disabled on or before February 23, 2001.

For the reasons set forth above, the Court hereby **ORDERS** that Plaintiff's and Defendant's Motions for Judgment on the Pleadings (Document Nos. 10 and 15) are **DENIED**, Plaintiff's letters, construed as Motions to Remand (Document Nos. 12 and 13) are **GRANTED**, the decision of the Commissioner is **VACATED**, this matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order, and this matter is **DISMISSED** from the Court's docket.

---

9. The undersigned recognizes that by virtue of occurrences such as accidents or the onset of further severe medical and/or psychological conditions after ALJ decisions upon claimants' first applications, subsequent applications will quite naturally result in disability onset dates sometime thereafter as well. When, on the other hand, disability is found upon subsequent applications on substantially the same evidentiary background as was considered with respect to prior applications without such occurrences, especially when, as in this case, the claimant is found in the first case to be teetering on the edge of disability with only the capacity to perform light work with additional nonexertional limitations, has a limited education and suffers from signifi-cant pain, the disability onset date might reasonably be sometime prior to the ALJs decision respecting the prior applications in view of a subsequent finding of disability. *See Howard v. Apfel*, 17 F.Supp.2d 955, 971–72 (W.D.Mo.1998)("[B]ecause ALJ ... found plaintiff disabled as of the day after the denial on reconsideration of her first application ... and the evidence in the record establishes that plaintiff's condition was substantially the same in 1991 as it was in 1993, remand is not warranted and plaintiff is entitled to an award of benefits covering the period [from the date of onset of disability as stated by plaintiff in her initial application through the date of denial of her first application on reconsideration].)"