Gilbert **BARRIENTOZ** Plaintiff,

v.

Larry G. **MASSANARI, Acting Commissioner of the Social Security Administration, Defendant.**

No. CIV.A.SA–00–CA–1193FB.

United States District Court,
W.D. Texas,
San Antonio Division.

March 29, 2002.

**578**

Constance R. Somers, San Antonio, TX, for Gilbert Barrientoz.

Robert Shaw-Meadow, U.S. Attorney's Office, San Antonio, TX, for Kenneth S. Apfel.

## MEMORANDUM ORDER AND DECISION

BIERY, District Judge.

### I.  *Introduction*

Plaintiff/Claimant Gilbert Barrientoz, through his motion for remand, challenges the administrative denial of his application for Title II disability insurance benefits (DIB) and Title XVI supplemental social security income (SSI) benefits made on September 29, 1997.[1] The main issue presented in this appeal is whether the failure of the Appeals Council to consider the effect of plaintiff's subsequent award of benefits and the supplemental medical evidence supporting that benefit award, in light of Social Security Administration's

("SSA") internal regulation EM–99147,[2] warrants remand.

In addition to his request for remand based on the Commissioner's failure to follow his own internal regulations, the plaintiff also challenges the ALJ's decision as not supported by substantial evidence.[3] Specifically, plaintiff argues the ALJ erred when he rejected evidence from plaintiff's treating physician concerning peripheral neuropathy. Plaintiff contends reversal is warranted and a rehearing should be ordered because the ALJ ignored a crucial part of the medical expert's testimony. The expert explained at the hearing that in order to properly assess the treating physician's diagnosis of peripheral neuropathy, plaintiff needed to undergo further objective medical testing, such as an EMG and nerve conduction testing.[4] Plaintiff's medical records specifically showed that these critical tests were lacking. In fact, the testifying medical expert testified that a "good work up" had not been conducted on plaintiff.[5] The ALJ, however, refused to make the referral, even when specifically requested to do so by plaintiff's representative (a non-attorney) at the hearing, opting instead to altogether discount plaintiff's contention he suffered from peripheral neuropathy.[6] Further, plaintiff maintains the ALJ's flawed analysis concerning the disabling effect of plaintiff's medical impairments, particularly his peripheral neuropathy, caused the ALJ to err in his determination of plaintiff's residual functional capacity ("RFC") and in his assessment of plaintiff's subjective testimony concerning his physical limitations.[7]

---

1.  Docket Entries 12 and 13 (Memorandum of Authorities in Support of Plaintiffs' Motion for Remand of Administrative Denial), and Transcript at 98–100.

2.  This internal regulation titled, "Processing Subsequent Claims: New Policy Announced" (effective December 30, 1999), is *available at* http://www.ssas.com/newclaim.htm.

3.  *Id.* at 4–10.

4.  *Id.* at 5–9.

5.  Transcript, at 41.

6.  *Id.* at 7; *see* Transcript, at 41–46.

7.  Docket Entry 13, at 8–10.

For these reasons, plaintiff asks that this case be remanded for another administrative hearing so an ALJ can review the new and material evidence on plaintiff's peripheral neuropathy condition and give due consideration to the subsequent award of social security benefits. Plaintiff maintains this new evidence is indeed material because it relates to the relevant time period covered by plaintiff's prior claim for benefits made the basis of this appeal.[8]

In response, defendant has filed a brief in support of the Commissioner's decision, urging the Court to affirm same and to deny plaintiff's request for remand.[9] Failing to explain why the Appeals Council did not follow SSA internal regulation EM–99147 (hereinafter referred to as SSA–EM–99147), the defendant argues the new evidence was, nevertheless, not material to the prior benefit application. Defendant further contends that plaintiff should have appealed the onset date of disability determination, awarding benefits as of May 4, 1999, rather than challenge the denial of benefits later affirmed by the Appeals Council.

Having considered plaintiff's motion to remand, the defendant's brief in support of the Commissioner's decision, the plaintiff's reply brief, the transcript of the Social Security Administration proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, as well as the entire record in this matter, the Court hereby **REMANDS** this case to the Commissioner for another administrative hearing before an ALJ. Crucial to this Court's decision is defendant's failure to provide any explanation as to why the Appeals Council did not follow SSA–EM–99147 and consid-

er the subsequent approval of benefits before affirming the ALJ's ruling against the plaintiff. Further, the ALJ's decision to discount plaintiff's medical evidence of peripheral neuropathy is not supported by the other medical evidence of record. Particularly, the ALJ erred when he ignored the opinion of the testifying medical expert and the request made by plaintiff's representative and refused to refer plaintiff for further medical testing to assess whether the peripheral neuropathy was disabling. Under these circumstances, the ALJ committed error by not fulfilling his obligations of developing a complete record of plaintiff's impairments. The ALJ's error is compounded by the fact that in rejecting plaintiff's condition of peripheral neuropathy, his sequential analysis of plaintiff's claim for benefits became skewed and not in accordance with the substantial evidence of record. Accordingly, the Court **GRANTS** plaintiff's motion for remand and **REVERSES** the Commissioner's decision on the ground that it is not supported by substantial evidence. The Court's reasoning for this ruling is fully set out below.

## II. *Jurisdiction*

The court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

## III. *Administrative Proceedings*

The Plaintiff was forty-five years old to the day at the time of the administrative hearing held on March 26, 1999.[10] He testified at the hearing that he has a ninth grade education and was last engaged in substantial gainful employment on July 17, 1997.[11] As such, this date was considered the onset date of plaintiff's alleged disability under the Act.[12] His past relevant work employment was that of a food service

---

8. *Id.* at 10.

9. Docket Entry 18. Plaintiff has filed a reply brief to defendant's response. Docket Entry 19.

10. Transcript, at 29.

11. *Id.* at 30.

12. *Id.* at 20.

worker whose immediate previous employer was Audie Murphy Hospital.[13] There is evidence plaintiff attempted to work part-time beginning in 1992 before the claimed onset date.[14] Due to his physical impairments, however, he could not work on a reduced schedule.[15] He testified he lives with his wife and his mother-in-law at his mother-in-law's house, does not do any household chores, and basically spends the day resting and laying down due to constant pain occasioned by minimal walking and/or sitting for extended periods of time.[16]

The record shows plaintiff suffered from polio as a child, leaving him with a shortened right leg, atrophy in the right leg and to a lesser extent in the left leg, and a right foot which is surgically shortened with reduced range of motion in the ankle.[17] He has a persistent right foot drop and walks with a brace, using a cane for balance.[18] He has post-polio induced degenerative arthritis in the right hip which, according to plaintiff, results in unremitting pain.[19] He also has glaucoma, migraine headaches, cirrhosis of the liver diagnosed in 1999, and diabetes.[20] In addition to these impairments, a combination of which plaintiff argues renders him disabled, plaintiff also maintains his peripheral neuropathy is a major contributor to his disabling state.[21]

On May 3, 1999, the ALJ ruled plaintiff was not disabled according to the Medical–Vocational Guidelines ("the Grids")[22] because he had the residual functional capacity to perform work not exceeding the sedentary level of exertion, subject to a "sit/stand" restriction.[23] Specifically, the ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act on July 17, 1997, the date the claimant stated he became unable to work, and continues to meet them through June 30, 2001.

2. The claimant has not engaged in substantial activity since July 17, 1997.

3. The medical evidence establishes that the claimant has severe post

---

13. *Id.* at 30. While employed, plaintiff had no supervisory duties. *Id.*

14. *Id.* at 31 and 106.

15. Transcript, at 31 and 43.

16. *Id.* at 36–40.

17. Docket Entry 13, at ¶ 3. *See also* Transcript, at 34–40.

18. *Id.*

19. *Id.*

20. *Id.*

21. According to the Stedman's Medical Dictionary, "neuropathy" is "[a] classical term for any disorder affecting any segment of the nervous system." STEDMAN'S MEDICAL DICTIONARY 1211 (27th ed.2000). It is known as a "disease involving the cranial nerves or the peripheral or autonomic nervous system." *Id.* Significantly, the term "diabetic neuropa-

thy" is defined as "a generic term for any diabetes mellitus-related disorder of the peripheral nervous system, autonomic nervous system, and some cranial nerves." *Id.* at 1212. Stedman's further explains:

This most common of the chronic complications of diabetes can affect either the peripheral or the autonomic nervous system, or both. Peripheral neuropathies can cause bilaterally symmetric hypesthesia, hyperesthesia, paresthesia, loss of temperature and vibratory sense, or causalgia. Involvement of the autonomic nervous system may be manifested by postural hypotension, gastroparesis, alternating diarrhea and constipation, and impotence. *The pathogenesis of chronic diabetic neuropathy is poorly understood. Symptoms tend to progress, and the response to treatment is unpredictable.* *Id.* at 1212 (Emphasis added).

22. *See* 20 C.F.R. Part 404, Subpart P, App. 2.

23. Transcript, at 14–22.

polio syndrome and degenerative arthritis right hip, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's statements regarding severe pain and the limitations imposed by his diagnosed medical impairments that prevent him from performing any work activity are found not to be credible.

5. The claimant has the residual functional capacity to perform the physical exertion requirements of work except a sit stand option is required. There are no nonexertional limitations (20 CFR §§ 404.1545 and 416.945).

6. The claimant is unable to perform his past relevant work as a food service worker.

7. The claimant's residual functional capacity for the full range of sedentary work is reduced by a sit stand option.

8. The claimant is 45 years old, which is defined as a younger individual (20 CFR §§ 404.1563 and 416.963). The claimant has a ninth grade education (20 CFR §§ 404.1564 and 416.964).

9. The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work activities of other work (20 CFR §§ 404.1568 and 416.968).

10. If the claimant had the capacity to perform the full range of sedentary work, section 404.1569 of Regulations No. 4 and section 416.969 of Regulations No. 16 and Rules 201.18 and 201.24, Table No. 1 Appendix 2, Subpart P, regulations no. 4, would direct a conclusion that, he is not. disabled. If the range of sedentary work were significantly compromised, section 201.00(h) of Appendix 2 indicates that a finding of disabled would be appropriate.

11. Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using the above-cited Rules 201.18 and 201.24 as a framework for decisionmaking, there are a significant number of jobs in the national economy which the claimant could perform. Examples of such jobs are: assembler, textile worker and bench hand assembly. There are thousands of such jobs in the state economy.

12. The claimant was not under a disability as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).[24]

Regarding the plaintiff's condition of peripheral neuropathy as diagnosed by his treating physician, the ALJ rejected such diagnosis, concluding that it was not supported by the objective medical evidence of record.[25]

On December 16, 1999, plaintiff underwent a right below-knee amputation after developing a diabetic ulcer which failed to heal.[26] Plaintiff's amputation occurred seven months after the ALJ's decision, and approximately nine months before the Appeals Council's denial of plaintiff's request for review on September 1, 2000.[27] He

---

**24.** *Id.* at 20–21.

**25.** *Id.* at 17.

**26.** Docket Entry 18, at 3; Transcript, at 5–7.

**27.** In denying plaintiff's request for review, the Appeals Council rendered the ALJ's decision the final decision of the Commissioner. Transcript, at 5. Moreover, it should be noted

was discharged from the hospital on January 3, 2000.[28] The impression of plaintiff's condition is described in the discharge report as follows:

> The patient at this point was admitted for treatment and further evaluation of a nonhealing right foot ulcer with Charcot joint secondary to peripheral neuropathy for diabetes mellitus and for vascular evaluation.[29]

Following that surgery, plaintiff re-applied for Social Security benefits and was approved at the initial level, with a notice of award dated April 15, 2000.[30] The notice expressly states that plaintiff was found disabled under the Act as of May 4, 1999, the day following the ALJ's decision at issue in this appeal.[31]

## IV. *Issues Presented*

1. Whether the Commissioner's failure to follow his own internal regulations warrants a remand based on plaintiff's subsequent approval for benefits, where there is no indication in the record that such approval was considered by the Appeals Council in its review of the May 3, 1999 ALJ's decision?

2. Whether substantial evidence supports the ALJ's decision that plaintiff was not disabled under the Act?

that contrary to defendant's assertion (Docket Entry 18, at 3), the record shows that plaintiff sought review to the Appeals Council on June 3, 1999. Transcript, at 16.

**28.** Records of that hospitalization, namely plaintiff's discharge summary report and plaintiff's history and physical report collected during the hospital admission, have been attached as Exhibit "A" to plaintiff's motion for remand.

**29.** Docket Entry 13, Exhibit A, at 2.

**30.** *Id.* at Exhibit B.

**31.** *Id.* at 1.

## V. *Analysis*

### A. *Standard of Review*

In reviewing the Commissioner's decision denying disability insurance benefits, the court is limited to a determination of whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence.[32] Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[33] Substantial evidence must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence.[34]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[35] In applying the substantial evidence standard, the court must carefully examine the entire record but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[36] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[37] Four ele-

**32.** *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir.1995); 42 U.S.C. § 405(g), § 1383(c)(3).

**33.** *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir.1995).

**34.** *Abshire v. Bowen,* 848 F.2d 638, 640 (5th Cir.1988).

**35.** *Martinez,* 64 F.3d at 173.

**36.** *Ripley,* 67 F.3d at 555; *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir.1990) (court is not to reweigh the evidence, try the issues *de novo,* or substitute its judgment for that of the Commissioner).

**37.** *Martinez,* 64 F.3d at 174.

ments of proof are weighed in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[38]

### B. Is Remand for a Rehearing Before an ALJ Warranted?

In support of his request for remand, plaintiff relies on two new pieces of evidence which were not considered by the ALJ in his May 3, 1999 ruling. According to plaintiff, this evidence is both relevant and material to the time period for which disability was denied. The two pieces of evidence are: (1) plaintiff's medical reports from December 16, 1999 through January 3, 2000, documenting his hospital admission and surgical procedure on his right leg ("Exhibit A" to plaintiff's motion), and (2) the subsequent notice of approval for Social Security benefits dated April 15, 2000, finding plaintiff disabled as of May 4, 1999, the day after the ALJ rendered his decision ("Exhibit B" to plaintiff's motion). Defendant disputes the "materiality" of this evidence to the claim for benefits made the basis of the ALJ's May 3, 1999 decision.[39]

Pursuant to the "judicial review" provision of the Act, 42 U.S.C. § 405(g), a district court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."[40] The Fifth Circuit has held that in order for the new evidence to be considered "material," it must satisfy two requirements: (1) it must relate to the time period for which disability benefits were denied; and (2) there must be a reasonable possibility that the new evidence would change the outcome of the Commissioner's decision had it been before him.[41] Although § 405(g) limits the scope of this court's review of the Commissioner's final decision, the Fifth Circuit has repeatedly observed that "the [Act] is to be broadly construed and liberally applied."[42] Consistent with this view of the Act, a final decision by the Commissioner will be upheld by this court if it is supported by substantial evidence based "on the record as a whole."[43]

The regulations promulgated by the Commissioner under the Act emphasize this need to examine the totality of the evidence.[44] The need to consider all the available evidence is particularly strong when a claimant has two or more impairments, as in this case.[45] Finally, consider-

---

38. *Id.*

39. Docket Entry 18, at 5–6.

40. *See McQueen v. Apfel,* 168 F.3d 152, 156 (5th Cir.1999); *Haywood v. Sullivan,* 888 F.2d 1463, 1471 (5th Cir.1989) (both cases citing to 42 U.S.C. § 405(g)).

41. *See Dorsey v. Heckler,* 702 F.2d 597, 604–05 (5th Cir.1983); *Chaney v. Schweiker,* 659 F.2d 676, 679 & n. 4 (5th Cir.1981); *Haywood,* 888 F.2d at 1471 ("Implicit in the materiality requirement [is] that the new evidence relate to the time period for which benefits were denied, and that it did not con-

cern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.").

42. *Chaney,* 659 F.2d at 679 & n. 3.

43. *Dorsey,* 702 F.2d at 605; *Millet v. Schweiker,* 662 F.2d 1199,1201 (5th Cir.1981) (duty to scrutinize record in its entirety).

44. 20 C.F.R. §§ 404.1520 & 416.920 ("[w]e consider all material facts to determine whether you are disabled.") (cited in *Dorsey,* 702 F.2d at 605).

45. *Dorsey,* 702 F.2d at 605.

ations of fairness and efficiency may enter into a decision whether to remand a case to the Commissioner in the face of new medical evidence. In this regard, the Fifth Circuit has held: "considerations of fairness and efficiency, together with the rule that impairments must be considered *in toto,* require the Secretary to consider all the evidence including evidence of events occurring *after* the initial administrative hearing-in deciding the case on remand."[46] With these legal principles in mind, the Court will discuss the particular facts presented in this case in the context of plaintiff's motion for remand.

It is undisputed plaintiff developed a non-healing diabetic ulcer in his right foot in the fall of 1999 and underwent a below-knee amputation on December 16, 1999. He remained admitted in the hospital through early January of 2000. The discharge summary report of that surgical procedure explicitly attributes plaintiff's non-healing right foot ulcer to plaintiff's significant history of diabetic peripheral neuropathy.[47] In fact, these records show that when the plaintiff was first seen by a specialist for the ulcer (approximately six months after the ALJ's decision), she found a stone lodged in the foot, but the plaintiff could not feel it because of the sensory loss caused by the peripheral neuropathy.[48] This type of gradual sensory loss, ultimately leading to the partial amputation of plaintiff's right leg in this case,

is common on patients suffering from diabetic peripheral neuropathy.[49]

Following his amputation, plaintiff reapplied for benefits and was approved at the initial level on April 15, 2000.[50] Significantly, plaintiff was found to be disabled, not as of the date of the amputation (December 16, 1999), but as of May 4, 1999, the day following the May 3, 1999 decision by the ALJ.[51] This is the earliest possible date on which plaintiff could have been approved without a reopening of the ALJ's decision, an action which is not permitted by Social Security procedures when a case is approved at the initial level.[52] At the time of plaintiff's new application, the claim before this Court was pending at the Appeals Council.

■ Social Security Regulation EM–99147 provides that if a new claim is approved while a prior claim is pending at the Appeals Council, the new file is to be sent to the Appeals Council to determine if it contains new and material evidence relating to the time period that was before the ALJ on the prior claim. The regulation in that regard specifically states:

### B. NEW PROCEDURE [53]

2. The DDS [Disability Determination Services] will limit any favorable determination on the subsequent claim to the period beginning with the day after the date of the ALJ's decision [as was done in the instant case]. If a subsequent claim results in a fa-

---

46. *Ferguson v. Schweiker,* 641 F.2d 243, 250 & n. 9 (emphasis added).

47. Docket Entry 13, at ¶ 9 and Exhibit A.

48. *Id.* at 4.

49. *See Stedman's* definition for "diabetic peripheral neuropathy," at n. 21, *supra* and Docket Entry 19, at 1–2.

50. Docket Entry 13, at Exhibit B.

51. *Id.,* Exhibit B, at 1.

52. *Id.* at ¶ 9 and SSA–EM–99147, at 2.

53. According to paragraph one of Section B, this internal regulation became effective immediately after its enactment on December 30, 1999. It provides that when a prior claim is pending at the Appeals Council level, SSA will send subsequent disability claims to the DDS for development and adjudication, irrespective of whether they are filed under the same or different title than the prior claims pending at the Appeals Council. SSA–EM–99147, at 2.

vorable determination, including a later onset or closed period of disability determination, the determination will be effectuated with an onset date no earlier than the day after the date of the ALJ decision on the prior claim. After effectuation of the determination, the subsequent claim will be sent to the AC [Appeals Council] to determine if it contains new and material evidence relating to the period that was before the ALJ on the prior claim.[54]

The regulations also provide the procedures the Appeals Council must follow in determining whether the subsequent application contains new and material evidence relevant to the prior claim which would warrant a remand to the ALJ for adjudication.[55] The transcript of this case, and in particular the Appeals Council's decision dated September 1, 2000, is devoid of any indication that this procedure was followed. As plaintiff argues, if the procedure was not followed, the failure of the SSA to adhere to its own internal regulations requires remand.

Based on the Court's research, it appears the particular regulation at issue in this case has yet to be addressed by any court. In *Newton v. Apfel*,[56] the Fifth Circuit observed that the Hearings, Appeals and Litigation Law Manual ("HALLEX") issued by the SSA does not carry the authority of law. Nevertheless, the Court reaffirmed its previous holding that: " 'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.' If prejudice results from a violation, the result cannot

stand."[57] The Court in *Newton* held the failure of the SSA to follow its own internal procedures, as argued by the claimant in that case, was not prejudicial to her.[58]

In contrast, in the case before this Court, the prejudice to plaintiff by the Appeals Council's failure to follow SSA–EM–99147 is inescapable. As discussed more fully below, the subsequent approval of benefits and the medical condition on which it was based (i.e., diabetic peripheral neuropathy) were both highly relevant to the prior claim pending before the Appeals Council. There is more than a reasonable possibility that had this evidence been before the ALJ, the outcome of plaintiff's prior claim would have been different.

In response, defendant neglects to address the failure of the Appeals Council to follow the procedures delineated in SSA–EM–99147. Defendant merely makes the following arguments with respect to the new evidence presented by plaintiff: (1) that it was not presented at the administrative level, and as such, this Court cannot make factual findings regarding the evidence; (2) that it does not "relate to the period on or before" May 3, 1999, the date of the ALJ's decision (i.e., that plaintiff has not shown the presence of a disabling condition prior to this date); (3) plaintiff's new evidence is not material because it merely represents "evidence of a later-acquired disability or of the subsequent deterioration of the previous non-disabling condition," which does not justify remand; and (4) to the extent that plaintiff disagrees with the later onset disability date of May 4, 1999, plaintiff's only "remedy is to appeal his subsequent approval of benefits."[59] None of these arguments have merit.

---

54. *Id.*

55. *Id.* at 10–13.

56. 209 F.3d 448 (5th Cir.2000).

57. *Id.* at 459 (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir.1981)).

58. *Id.* at 459–60.

59. Docket Entry 18, at 4–6.

First, the plaintiff has not asked this Court to make any factual findings regarding the new evidence attached to his motion.[60] In fact, based on defendant's third argument as outlined above, it is defendant and not plaintiff who is asking the Court to enter factual findings regarding this evidence.[61] Plaintiff merely argues this evidence should have been part of the record and considered by the Appeals Council prior to deciding plaintiff's prior claim, as required by SSA–EM–99147. Based on this procedural violation and the errors committed by the ALJ which will be discussed below, the plaintiff argues remand should be granted and another hearing held on plaintiff's prior claim. As plaintiff stated in his reply brief: "[I] asked the Court only to remand the case to the Commissioner so that the relevancy of the new evidence can be considered as it relates to the Plaintiff's condition during the time period covered by the ALJ's decision."[62] In other words, contrary to defendant's contention, the substantive merits of plaintiff's new evidence is not before this Court.

Second, the Court rejects defendant's argument that the relevant time period, for purposes of determining whether the new evidence "relates to the time period for which disability benefits were denied," is the date (and any time prior) to the ALJ's decision dated May 3, 1999. Rather, it is the Court's opinion that the relevant time period is plaintiff's alleged onset date of disability (July 7, 1997) through June 30, 2001, the date the ALJ found the plaintiff met the disability insured status requirements of the Act.[63] Since plaintiff's amputation and subsequent approval of disability benefits occurred prior to June 30, 2001, this Court finds the new evidence does indeed relate to the period for which disability benefits were denied.

Third, while defendant argues that plaintiff's sole remedy is to appeal the determination of onset date of disability made at his subsequent approval of benefits, this argument ignores the specific responsibility of the Agency, as set forth in SSA's internal regulations, to consider the materiality of the new evidence. SSA–EM–99147 expressly provides that once the DDS determined that plaintiff's onset date of disability on his subsequent application for benefits was May 4, 1999 (the earliest day after the date of the ALJ decision on the prior claim), it was the SSA's responsibility to send the favorable determination to the Appeals Council to determine if it contains new and material evidence relating to the period that was before the ALJ on the prior claim. Further, according to SSA–EM–99147, it is only when the "DDS denies the subsequent claim at the initial level," that "the claimant may appeal the determination to the reconsideration level, and the DDS will process the claim normally. If the reconsideration determination is unfavorable, the claimant may appeal the determination to the hearing level. At that stage, the hearing office (HO) will defer action on the new request for hearing until the AC [Ap-

60. Docket Entry 19, at 1.

61. *As plaintiff states in his reply brief:*
The Commissioner states in his brief that the new evidence which was submitted merely represents evidence of a later acquired disability or a subsequent deterioration of a previous, non-disabling condition and therefore, the evidence does not justify a remand. In that statement, the Commis-
sioner is asking this Court to make a medical judgment that the plaintiff's condition arose at a certain point in time, when, in fact, peripheral neuropathy is a gradually progressive condition.
Docket Entry 19, at 2.

62. *Id.*

63. Transcript, at 20, Finding No. 1.

peals Council] completes its action on the prior claim . . . ." [64]

The purpose of SSA–EM–99147 is to expedite the consideration of prior claims once a subsequent award of benefits is granted and the claimant maintains the evidence on which it was based relates to the time period for his prior claim. There is no merit in defendant's argument that plaintiff should have appealed his subsequent award of benefits because he disagreed with the SSA's finding that plaintiff's onset date of disability was May 4, 1999. This was the earliest onset date of disability the SSA could have found without conflicting with the ALJ's May 3, 1999 decision.[65] The error is not in the subsequent award of benefits, but instead is in the SSA's failure to send this information to the Appeals Council for consideration of its impact on the ALJ's denial of plaintiff's prior claim.

For these reasons, a remand for a rehearing before an ALJ is warranted. The SSA's failure to adhere to its own internal regulations, namely SSA–EM–99147, was prejudicial to plaintiff. As noted below, this prejudice is compounded by the errors committed by the ALJ in evaluating the evidence on plaintiff's prior claim, necessitating the need for a rehearing of the evidence before an ALJ.

### C. Is the May 3, 1999 ALJ's Decision Supported by Substantial Evidence?

Plaintiff challenges the ALJ's decision on three main grounds: (1) the ALJ violated "the treating physician rule" by ignoring the evidence of plaintiff's peripheral neuropathy; (2) the ALJ assumed "the role of doctor" when assessing plaintiff's residual functional capacity; and (3) the ALJ erred in his credibility assessment of plaintiff by failing to consider plaintiff's voluntary reduction of his work schedule, beginning in 1992, due to his impairments. Plaintiff argues the ALJ committed reversible error and his findings are not supported by substantial evidence. The court agrees. Before addressing plaintiff's arguments, however, an overview of the applicable legal standards is warranted.

#### 1. Entitlement to Benefits

Every individual who is insured for disability insurance benefits, has not attained retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability insurance benefits.[66] The term "disabled" or "disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[67] An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.[68]

#### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are

---

**64.** SSA–EM–99147.

**65.** Docket Entry 19, at 2.

**66.** 42 U.S.C. § 423(a)(1).

**67.** 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

**68.** 42 U.S.C. § 1382c(a)(3)(B).

to be evaluated according to a five-step process.[69] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[70]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity. If so, the claimant will be found not disabled regardless of his medical condition or his age, education, and work experience. The second step involves determining whether the claimant's impairment is severe. If it is not severe, the claimant is deemed not disabled. In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments. If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, and work experience. If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of his past work. If he can still do this kind of work, he is not disabled. If he cannot perform his past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities and his age, education, and work experience, to do other work. If he cannot do other work, he will be found to be disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[71] Once he has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that claimant is capable of performing.[72] If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work.[73]

In this case, the ALJ reached his decision at step five of the sequential evaluation process.[74] The ALJ found plaintiff suffered from severe post polio syndrome and degenerative arthritis on the right hip, but he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.[75] The ALJ found that although plaintiff was unable to return to his past relevant work experience as a food service worker, he retained the residual functional capacity to perform the full range of sedentary work, subject to a "sit/stand" restriction. The ALJ relied on the Grids and on the testimony of a vocational expert to conclude that although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, there are a significant number of jobs in the national economy which plaintiff could perform (i.e., assembler, textile worker and bench hand assembly).[76] It is this Court's opinion that this finding is not supported by substantial evidence.

### a. The treating physician rule and evidence of peripheral neuropathy

Regarding the plaintiff's condition of peripheral neuropathy as diagnosed by his treating physician, Dr. Cegelski, the ALJ made the following finding:

**69.** 20 C.F.R. §§ 404.1520 and 416.920.

**70.** *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995).

**71.** *Id.* at 564.

**72.** *Anderson v. Sullivan,* 887 F.2d 630, 632 (5th Cir.1989).

**73.** *Id.* at 632–33.

**74.** Transcript, at 21.

**75.** *Id.* at 20, Finding No. 3.

**76.** *Id.* at Finding No. 2.

The claimant has been diagnosed with diabetes but there is no evidence of neuropathy demonstrated by significant and persistent disorganization of motor function in at least two extremities resulting in sustained disturbance of gross or dexterous movements, or gait and station. Acidosis occurring at least on the average of once every two months documented by appropriate blood chemical tests. [There is no] amputation of a leg or retinitis proliferans. There is no evidence of diabetic retinopathy or cataracts. *There is no objective evidence to support Dr. Cegelski's finding of peripheral neuropathy and this conclusion is found not to be credible by the undersigned.*[77]

Plaintiff argues this finding violated the Fifth Circuit's "treating physician rule."[78] The Court agrees.

■■■■ The "treating physician's rule" provides that:

It is not only legally relevant but unquestionably logical that the opinions, diagnosis, and medical evidence of a treating physician whose familiarity with the patient's injuries, course of treatment, and responses over a considerable length of time, should be given considerable weight. [U]nless there is good cause shown to the contrary the testimony of the treating physician must be accorded substantial weight.[79]

Absent reliable medical evidence from a treating or examining physician, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).[80] Specifically, this regulation requires consideration of: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.[81] Significantly, the ALJ failed to discuss any of these factors in his May 3, 1999 decision.[82] Had the ALJ considered these factors, he would have discovered that Dr. Cegelski was the plaintiff's family doctor who saw him periodically, from every ten days to every six weeks during the fifteen months prior to the hearing.[83] Further, the evidence of record establishes that during those visits, Dr. Cegelski consistently diagnosed peripheral neuropathy on numerous occasions, including:

- on October 17, 1997, Dr. Cegelski sent claimant to physical therapy after having diagnosed him with osteoarthritis and peripheral neuropathy on both feet;[84]

77. *Id.* at 17 (Emphasis added).

78. Docket Entry 13, at 5 (citing *Smith v. Schweiker,* 646 F.2d 1075, 1081 (5th Cir. Unit A, 1981) and *Floyd v. Bowen,* 833 F.2d 529 (5th Cir.1987)).

79. *Id.*

80. 20 C.F.R. § 404.1527(d)(2) (codifying Social Security Regulation SSR–96–2p). This Regulation provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is

well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.*

81. *Id.*

82. Transcript, at 14–22.

83. Docket Entry 13, at 6.

84. *Id.* at n. 3 (citing to Transcript, at 156).

• on December 22, 1997, Dr. Cegelski noted edema in both feet and diagnosed peripheral neuropathy; [85]

• on February 13, 1998, Dr. Cegelski included "diabetic peripheral neuropathy" as a diagnosis on his answers to the SSA's questionnaire concerning claimant's residual functional capacity; [86]

• on May 8, 1998, Dr. Cegelski noted claimant's complaints of right foot edema off and on for two months. Dr. Cegelski's diagnosis at the time was "diabetic peripheral neuropathy of both feet"; [87]

• on June 14, 1998, an emergency room doctor referred claimant to a neurologist, Dr. Silva, after having diagnosed him with peripheral neuropathy on the left side of his body; [88]

• on June 15, 1998, Dr. Cegelski effectuated the emergency room doctor's referral with a diagnosis of diabetic peripheral neuropathy on the left side of face, left arm and left leg; [89]

• on August 11, 1998, and September 10, 1998, Dr. Cegelski's diagnoses included peripheral neuropathy.[90]

There is no discussion in the ALJ's decision concerning these reports and the consistent diagnosis of peripheral neuropathy made by Dr. Cegelski during this time period.[91]

Instead, in rejecting Dr. Cegelski's diagnosis of peripheral neuropathy, the ALJ was apparently relying on the statement made at the hearing by the medical expert, Dr. Briggs, to the effect that there were no objective medical findings in support of such diagnosis.[92] In making this statement, it is evident that Dr. Briggs relied exclusively on the one-time evaluation conducted on January 5, 1998, by the Social Security consultative examiner, Dr. Ross.[93] Based on his evaluation, Dr. Ross observed no signs of peripheral neuropathy.[94] More significantly, however, is Dr. Briggs' testimony that the objective medical evidence needed to document peripheral neuropathy consisted of an EMG nerve conduction test.[95] Dr. Briggs noted that, unfortunately, the plaintiff had never undergone such testing on his legs throughout the relevant time period made the basis of his claim for benefits.[96] Based on Dr. Briggs' hearing testimony, the plaintiff's representative immediately made an oral request to the ALJ asking him for a referral for this testing to be conducted on the plaintiff. Despite being fully aware of the importance of this testing to fully assess the validity of plaintiff's allegation that he suffered from peripheral neuropathy as diagnosed by Dr. Cegelski, the ALJ declined the request.[97] Notably, defendant's response does not discuss the ALJ's failure to refer plaintiff for objective testing, arguing instead that the evidence of record supports the ALJ's finding of no peripheral neuropathy. For the following reasons, the Court cannot agree with the defendant.

**85.** *Id.* (citing to Transcript, at 229).

**86.** *Id.* (citing to Transcript, at 231).

**87.** *Id.* (citing to Transcript, at 217).

**88.** *Id.* (citing to Transcript, at 209).

**89.** *Id.* (citing to Transcript, at 208).

**90.** *Id.* (citing to Transcript, at 202 and 204).

**91.** *Id.* at 14–22; Docket Entry 13, at 6 & fn.3, and Docket Entry 19, at 2–3.

**92.** Transcript, at 15–16, 32–34, and 40–42.

**93.** *Id.*

**94.** *Id.* at 32–34, 148–50.

**95.** *Id.* at 41.

**96.** *Id.*

**97.** *Id.* at 41, 46.

Fifth Circuit case authority provides that if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination of treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1515(e).[98] Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status."[99] "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'"[100] The treating physician's opinions are not conclusive.[101] The opinions may be assigned little or no weight when good cause is shown.[102] Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic tech-

niques, or is otherwise unsupported by the evidence.[103]

The Court finds, in this case, the ALJ lacked good cause to summarily reject the treating physician's evidence that plaintiff suffered from peripheral neuropathy without first seeking additional information from Dr. Cegelski or referring plaintiff for the needed medical testing. The EMG or nerve conducting test as mentioned by Dr. Briggs, and as requested by plaintiff, would have filled the gap existing in plaintiff's medical evidence. The ALJ's refusal to supplement the record makes the materiality of plaintiff's new evidence more crucial to the issue of whether Dr. Cegelski's diagnosis of peripheral neuropathy was a sound one.

For instance, the new medical evidence detailing plaintiff's struggle with a non-healing ulcer on his right foot, which was directly traceable to his peripheral neuropathy and ultimately lead to amputation, establishes that Dr. Cegelski, who knew the plaintiff's medical condition well and who examined him frequently, may have been correct in his diagnosis.[104] These events, occurring about seven months after

---

**98.** To that extent, the Regulation further provides:

(1) We will first recontact your treating physician or [. . .] to determine whether the additional information we need is readily available. *We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.*

20 C.F.R. § 404.1512(e); *see also Newton,* 209 F.3d at 453 (where the court reversed and remanded the case, finding that the ALJ had erred when he summarily rejected the opinions of the claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant).

**99.** *See Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir.1994), *overruled on other grounds by Sims v. Apfel,* 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).

**100.** *Newton,* 209 F.3d at 455 (quoting *Paul,* 29 F.3d at 211).

**101.** *Brown v. Apfel,* 192 F.3d 492, 500 (5th Cir.1999).

**102.** *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir.1994), *cert. denied,* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).

**103.** *Brown,* 192 F.3d at 500; *Paul,* 29 F.3d at 211.

**104.** Docket Entry 13, Exhibit A.

the ALJ's hearing, underscore the importance of "the treating physician" rule.[105] As plaintiff points out: "If the ALJ had accepted the diagnosis of peripheral neuropathy, his rejection of the claimant's credibility and his determination of his residual functional capacity might have been different; in fact, they might have been the same as that of the state agency examiners who approved the claim the following year."[106] Under these circumstances, remand of this case for a rehearing before an ALJ is appropriate so that proper weight can be given to the opinion of the treating physician and his diagnosis of peripheral neuropathy and related physical restrictions attributed to that condition.

### b. The ALJ's determination of plaintiff's RFC

Plaintiff next argues the ALJ impermissibly substituted his own opinion on a medical issue for that of the treating physician when he concluded that plaintiff could perform sedentary work, with a sit/stand option.[107] Specifically, the plaintiff contends that the "sit/stand option" adopted by the ALJ was not supported by any evidence of record, and that in fact, it directly conflicted with Dr. Cegelski's opinion that plaintiff could only sit for a total of four hours in an eight hour day.[108] This restriction becomes more critical, according to plaintiff, because the vocational expert conceded that the jobs she had originally proposed in response to the ALJ's hypothetical would not be available if the plaintiff could not sit for the majority of the working day.[109]

In light of the previous discussion concerning the ALJ's errors in discounting the treating physician's diagnosis and findings, the Court need not address at this time plaintiff's argument that the ALJ assumed the role of doctor in reaching his analysis of plaintiff's RFC. Further, due to the ALJ's errors in failing to consider the opinion of plaintiff's treating physician with respect to peripheral neuropathy and related physical restrictions, the Court finds the ALJ's determination of plaintiff's RFC became skewed and should be reversed because it is not supported by substantial evidence. As one court so poignantly stated:

> [If] there are gaps in the record as to material facts, . . . this will cause a skewed view of the evidence that makes it impossible to conclude that a decision is supported by substantial evidence. . . . To this end, where it is clear that material evidence was 'either not before the Secretary or was not explicitly . . . considered by him, . . . although such consideration was necessary to a just determination of a claimant's application,' the matter should be remanded to the Secretary for the taking of that additional evidence.[110]

### c. The ALJ's credibility assessment

■ The ALJ ruled he did not find credible plaintiff's subjective statements regarding the severe limitations his physical impairments posed on his personal life and work activities.[111] Plaintiff argues that in making this assessment, the ALJ

---

**105.** Docket Entry 19, at 2.

**106.** Docket Entry 13, at 7.

**107.** *Id.* at 8 (citing *Rohan v. Chater*, 98 F.3d 966 (7th Cir.1996)).

**108.** *Id.* (citing to Transcript, at 231).

**109.** *Id.* at 9 (citing to Transcript, at 45–46).

**110.** *Essig v. Secretary of Health & Human Servs.*, 531 F.Supp. 55, 57 (E.D.N.Y.1981) (citations omitted). This language was quoted by the Fifth Circuit in *Dorsey*, 702 F.2d at 604.

**111.** Transcript, at 20, Finding No. 4.

completely overlooked one of the key pieces of evidence, namely that the plaintiff had voluntarily reduced his work to part-time (twenty hours a week) seven years earlier because of the extensive walking and bending required by his job. The plaintiff cites to his earnings records made part of the file which confirms a substantial drop in wages from the previous level beginning in 1992.[112]

When the onset of a disability is gradual, as is the case with plaintiff's medical problems, one of the critical pieces of evidence is when the claimant himself stopped (or reduced) his work activity because of his health.[113] Not once did the ALJ refer in his decision to the fact that the claimant had voluntarily reduced his work activity in half because of his impairments five years before stopping work altogether on July 17, 1997.[114] This evidence is of particular importance because it directly contradicts the findings made by the Social Security consultative examiner, Dr. Ross, in his one-time evaluation of plaintiff on January 5, 1998,[115] and by the testifying expert, Dr. Briggs. Both of these experts, in essence, concluded that while significant abnormalities were found on plaintiff's physical condition (i.e. "claimant has polio with residual weakness in the left—in the lower extremities with some atrophy and a right foot drop in which he's treated with an AFO that is braced"),[116] these abnormalities have been "no worse that they had been in

the last five to ten·years."[117] The ALJ relied on this conclusion in his decision.[118]

Plaintiff's voluntary decision to reduce his work hours to a part-time schedule (six years before Dr. Ross' examination) is indicative that his medical impairments were indeed worsening and significantly restricting his ability to work. As plaintiff states in his reply brief: "[his work] reduction was made because of his medical condition, and it should have been highly relevant to the determination of Plaintiff's disability."[119] There is no indication that such evidence was considered by either Dr. Ross or Dr. Briggs when they reached their conclusions.[120] Failure to consider this evidence puts into question the credibility of their medical findings and the ALJ's reliance on their opinions. Moreover, the defendant does not address this issue at all in his response to plaintiff's motion.[121] Accordingly, because there is no evidence that the ALJ considered plaintiff's hearing testimony concerning his decision to voluntarily reduce his work hours, as substantiated by his earning records, the ALJ's credibility determination of plaintiff becomes highly suspect.[122]

For these reasons, the Court finds that the ALJ's credibility assessment was erroneous and not supported by substantial evidence. The ALJ failed to consider plaintiff's hearing testimony as a whole within the context of the objective medical evidence of record and other written docu-

---

112. Transcript, at 101.

113. Docket Entry 13, at 9 (citing SSA 83–20).

114. Transcript, at 14–22.

115. *Id.* at 149–50.

116. Transcript, at 32.

117. *Id.*

118. *Id.* at 18.

119. Docket Entry 19, at 3.

120. Docket Entry 13, at 9.

121. Docket Entry 18, at 6–8. Defendant instead argues issues that are not in dispute by the plaintiff.

122. A "'no substantial evidence' will be found where there is a conspicuous absence of credible choices or no contrary medical evidence." *Abshire v. Bowen,* 848 F.2d 638, 640 (5th Cir.1988).

**594**

mentation submitted by plaintiff (i.e., his earning records) in support of his claim for benefits.

### VI. *Conclusion*

Based on the discussion above, the Court hereby **REVERSES** the Commissioner's decision and **GRANTS** plaintiff's motion to **REMAND** this case for a rehearing before the ALJ for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g).[123] Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **REVERSED** because it is not based on substantial evidence and is not a correct application of the relevant legal standards.

**IT IS FINALLY ORDERED** that plaintiff's motion for remand (Docket Entry 12) is **GRANTED** in all respects and this cause of action is **DISMISSED WITH PREJUDICE.**

123. *See Istre v. Apfel,* 208 F.3d 517, 519–21 (5th Cir.2000).